**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ELIZABETH MATTSON O'ROURKE,** ) | **CASE NO. 3:04CV 7228** |
| ) | |
| **Plaintiff,** ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| **vs.** ) | |
| ) | |
| **DEPARTMENT OF THE AIR FORCE, ET AL.,** ) | **OPINION AND ORDER** |
| ) | |
| **Defendants.** ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Motion for Summary Judgment filed by Defendants United States Department of the Air Force, James G. Roach, and Michael L. Dominquez, and Plaintiff Elizabeth Mattson O'Rourke's Motion for Summary Judgment.  Upon careful consideration and review of the applicable law, the Court grants Defendants' Motion for Summary Judgment.  Accordingly, Plaintiff's Motion for Summary Judgment is denied.

**I. FACTUAL BACKGROUND**

Plaintiff, Elizabeth M. O'Rourke (then Elizabeth M. Fisher), entered into a Health Professions Scholarship Contract ("Scholarship Contract") with the United States Air Force ("USAF") on February 22, 1988.  The Scholarship Contract provided that she was to serve a period of active duty as a commissioned officer in the Air Force in return for government funding of her medical school education.  She was appointed as Second Lieutenant in the Air

2

Force Reserve on June 7, 1988.  Plaintiff entered medical school on August 22, 1988, and began her participation in the Health Professions Scholarship Program.  She received her medical degree on June 6, 1992, and was granted a five year deferment from commencing active duty in order to pursue an otolaryngology residency.

In March 1994, prior to her third year of residency, Plaintiff was diagnosed with Diabetes Mellitus, which she subsequently reported to the Air Force as required in her annual statement of medical condition.  David A. Esparza, the Deferred Physician Program Manager, requested a letter from Keith T. Kanel, M.D., an Associate Professor of Medicine at the University of Pittsburgh Medical Center.  Dr. Kanel submitted a letter on behalf of the Plaintiff on July 2, 1994, stating that her diabetes was a very mild case, easily controllable with fourteen units of insulin, and reported her prognosis to be "excellent".  On July 12, 1994, Howard H. Sherman, Colonel, USAF, MC, determined that Plaintiff was medically disqualified for EAD (worldwide service), without a hearing, physical examination, or any opportunity to discuss her medical condition in person.  Plaintiff was officially medically disqualified for continued military service by Defendant Air Force on August 25, 1994.

A Notice of Proposed Discharge was sent to Plaintiff on September 28, 1994, however, it was sent to Plaintiff's former address and she had no knowledge of the Notice until November 1994, when the letter was forwarded to her new address.  Plaintiff asserts that she inquired about what her continuing responsibilities to the USAF would be upon discharge, and was told by the Deferred Physician Program Manager, David Esparza, that she would have no further obligation to the USAF.  This Notice did not contain any mention of recoupment of Plaintiff's scholarship expenses upon discharge from the USAF.  However, the Notice did advise Plaintiff of certain

3

rights, such as the right to counsel, right to additional time to consider her options, and the right to case review by an Administrative Discharge Board ("ADB").  The Notice was clear that the ADB was not a physical evaluation board, nor a board of inquiry authorized to make medical determinations; instead it could only determine whether disqualification was made by the appropriate surgeon.  This Notice of Proposed Discharge gave the Plaintiff two options, including transfer to Retired Reserve or the tender of her resignation.  She failed to choose either option, hence, she alleges her discharge was involuntary.  Plaintiff was neither notified that the ADB was convened on January 17, 1995, to consider her discharge, nor able to question their findings.

Plaintiff was Honorably Discharged from the USAF on February 21, 1995.  However, the first demand for recoupment of education expenses reached Plaintiff on February 23, 1995, and on March 28, 1995, she received a notification of indebtedness claiming ninety-one thousand eight hundred fifty-two dollars and ninety-two cents was owed and requiring payment in full by April 28, 1995.  Plaintiff also received notice from the Claims Examiner for the Directorate of Debt and Claims Management of the Defense Finance and Accounting Service that the Defendant USAF was still requiring recoupment, resulting in a levy being placed upon the Plaintiff's IRS tax refund for her year 2000 tax return.

Plaintiff, in accordance with 10 U.S.C.A. §1552, applied to the Air Force Board of Correction of Military Records ("Board") on May 15, 2002, in order to remove any obligation of reimbursement from her records.  The Board received and considered briefs from Plaintiff and Defendants, and rendered a majority report in September 2003, concluding that Defendant Air Force's recoupment decision was in error.  The Board concluded that Plaintiff had exhausted her

4

administrative remedies, the USAF denied Plaintiff of due process by failing to properly notify her of recoupment prior to her separation, and that the recoupment was not justified under 10 U.S.C.A. §2005.  However, Defendant Michael L. Dominguez, through his official capacity as Assistant Secretary for Manpower and Reserve Affairs, rejected the Board's findings and denied Plaintiff's application for correction of military records on December 16, 2003.

On April 28, 2004, Plaintiff initiated this action against the United States Department of the Air Force, James G. Roach (as Secretary of the Air Force), and Michael L. Dominguez (as Assistant Secretary of the Air Force for Manpower and Reserve Affairs).  Defendants' filed a Motion for Summary Judgment on June 17, 2004, in order to recover reimbursement for any money spent on Plaintiff's medical education.  In response, Plaintiff alleges that the USAF acted unlawfully when it refused to correct her records, and on July 19, 2004, a Motion for Summary Judgment was filed on her behalf.

## II. LAW AND ANALYSIS

### Standard of Review

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The court must view all evidence and reasonable inferences in favor of the nonmoving party, in order to determine whether or not there is a genuine issue of material fact for trial.  *Id.* at 255.  An opponent of a motion for summary judgment may not rely

5

on the mere allegations of the complaint, but must set forth specific facts showing a genuine

issue for trial.  *Id.* at 248.

**Administrative Procedure Act 5 U.S.C.A. §706**

The Secretary of a military department may correct a military record, pursuant to 10

U.S.C.A. §1552(a)(1), when the Secretary "considers it necessary to correct an error or remove

an injustice."  However, with the exception of paragraph (2), such corrections shall be made by

the Secretary acting through a board of civilians within the executive part of that military

department.  *Id.*  The Secretary concerned is authorized, by paragraph (2), to make corrections

without the civilian board, of military records announcing a decision that an individual is not

eligible to enlist, re-enlist, or not accepted for enlistment and announcing a promotion or

appointment (or lack there of) to a higher grade.  *Id.*

The decision by Defendant USAF to disregard the findings of the Board under

§1552(a)(1), is subject to judicial review under the Administrative Procedures Act ("APA").

*Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997).  The APA reads in pertinent part, "the

reviewing court shall hold unlawful and set aside agency action, findings, and conclusions, found

to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5

U.S.C.A. §706(2)(A).  In determining whether an agency action violates the APA, the court must

determine whether the agency conformed with controlling statutes, and whether the agency has

committed a clear error of judgment.  *See Maryland Dep't of Human Resources v. U.S. Dep't of

Agric.*, 976 F.2d 1462 (4th Cir. 1992).  It should be noted that in the military context, courts have

generally adopted an "unusually deferential" standard upon reviewing actions of the Secretary in

a §1552 proceeding.  *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989).

6

Plaintiff contends that Defendant USAF's discharge and subsequent refusal to accept the Board's recommendation to correct her military record, was arbitrary and capricious. Particularly, because the USAF failed to discharge Charles Johnson, M.D., after his diagnosis with diabetes mellitus. Rather, Dr. Johnson was allowed to serve on active duty for ten years, while Plaintiff was discharged instantly for an identical medical condition. However, the Secretary's decision to discharge Plaintiff was proper, because the Board decisions are very case and fact specific. *Strang v. Marsh*, 602 F. Supp. 1565 (D.R.I. 1985). Additionally, these two situations can be clearly distinguished, as Dr. Johnson had considerable military experience prior to his contracting diabetes mellitus.

Plaintiff's discharge was also proper under Air Force Regulation (AFR) 160-43, paragraph 4-35c which states, "Diabetes mellitus. Any type, including a history of juvenile onset (insulin dependant, type I) is also disqualifying even if there is no current need for insulin and blood sugars are normal." It is clear that any type of diabetes mellitus may cause an individual to be physically disqualified from the USAF. The Air Force Instruction (AFI) and AFR clearly state that diabetes mellitus is a disqualifying condition, and the USAF has met all the criteria listed in AFI 36-3209, paragraph 2.16, for honorable discharge of a medically disqualified individual. The pertinent clauses state an individual shall be discharged if: (1) found to be medically disqualified for worldwide duty; (2) the appropriate surgeon certified the report; (3) individual fails to apply for transfer to the retired reserve or tender resignation; and (4) they are not qualified for disability separation or retirement. AFI 36-3209, ¶ 2.16. Since Plaintiff was found to be medically disqualified for worldwide duty, by the appropriate surgeon, and Plaintiff was not qualified for disability separation or retirement, her discharge was proper under AFI.

7

Furthermore, Plaintiff failed to apply for transfer to the retired reserve or tender her resignation upon receiving the Notice of Proposed Discharge; thus, the decision by the Defendants to discharge Plaintiff was neither arbitrary nor capricious.  Therefore, the Defendants are entitled to judgment as a matter of law, since there are no genuine issues of fact to be resolved.

**Recoupment of Educational Expenses 10 U.S.C.A. §2005**

The Scholarship Contract voluntarily signed between the Plaintiff and an authorized agent of the Defendant USAF, on February 1988, states in paragraph 6(b):

> "Should I become unable to commence the period of active duty service commitment (ADSC) specified in this contract because of physical disqualification, I agree to reimburse the United States in one lump sum for the total cost of advanced education paid by the U.S. Government as specified in 10 U.S.C. §2005."

The language and terms of paragraph 6(b) of the Scholarship Contract are undisputed.  The applicable statute, §2005(a), authorizing recoupment of educational expenses, provides that as a condition of providing advanced education assistance the military may require a person to agree in writing to certain requirements.  The pertinent requirements set out in subparagraphs (3) and (4) of section (a) are:

> (3) that if such person, voluntarily or because of misconduct, fails to complete the period of active duty specified in the agreement, such person will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided such person as the unserved portion of the active duty; and
>
> (4) to such other terms and conditions as the Secretary concerned may prescribe to protect the interest of the United States.

In 1990, subparagraph (3) was amended to include the phrase, "or fails to fulfill any term or condition prescribed pursuant to clause (4)," after the word agreement (as seen above).  However, the version of the statute applicable in this case does not include the amendment from

8

above as the Scholarship Contract was signed in 1988, and that date is undisputed.

The Court finds that subparagraph (a)(4) allows the Secretary to proscribe any other terms or conditions necessary to protect the interest of the United States. 10 U.S.C.A. §2005(a)(4); *See also United States v. Stoeber*, 242 F. Supp.2d 1026, 1030 (D. Kan. 2003) (acknowledging §2005(a)(4) is a catch-all provision that allows the Secretary to proscribe additional terms and conditions that if unfulfilled will require reimbursement). Here, the Secretary chose to include the phrase "unable to commence the period of ADSC specified in this contract because of physical disqualification" directly in the Scholarship Contract, which was voluntarily signed by both Plaintiff and an authorized agent of the Defendant USAF. Therefore, upon Plaintiff's physical disqualification, the plain and unambiguous language of the contract states she is obligated to reimburse the United States Government, in one lump sum, for money spent on her medical education. The outcome in this case is evident, based upon the clear and unambiguous terms of the Scholarship Contract, subparagraph (a)(4), AFR, and the AFI regulations; therefore recoupment of Plaintiff's medical school tuition is justified. Since no genuine issues of material fact remain, the Defendants are entitled to judgment as a matter of law.

## Notice of Reimbursement 10 U.S.C.A. § 2005(g)(2)

Finally, Plaintiff relies upon §2005(g)(2), which sets forth the Secretary's duty to give notice of the recoupment requirements to any member of the armed services subject to such reimbursement:

> (g)(2) The Secretary of each military department shall ensure that a member of the armed forces who may be subject to a reimbursement requirement under this section is advised of such requirement before (1) submitting a request for voluntary separation, or (2) making a decision on a course of action regarding personal

9

involvement in administrative, non-judicial, and judicial action resulting from
alleged conduct.

Plaintiff avers that since she did not receive any notice of recoupment prior to the date of her

honorable discharge, the Defendants' actions violated §2005(g)(2).  Plaintiff asserts that she is

exempt from any obligation to reimburse the government for her medical education because the

USAF neglected to send a notice of recoupment.  However, subsection (g) was not added to

§2005 until 1993 (five years after the Plaintiff signed her Scholarship Contract).  Plaintiff

contends that she is exempt from amendments made in 1990 (the addition of (a)(4) in subsection

(a)(3)), therefore by applying the same method of reasoning, she would also be exempt from

amendments later made in 1993, and no notice would be required by the USAF.  Moreover,

Plaintiff was put on notice of recoupment based on the terms of the Scholarship Contract, the

rules and regulations of the USAF, and her decision to voluntarily accept these terms.  Therefore,

this argument does not entitle the Plaintiff to judgment as a matter of law.

## III. CONCLUSION

For the foregoing reasons the Court grants Defendants' Motion for Summary Judgment

as no genuine issues of fact remain, thus entitling the Defendants to judgment as a matter of law.

Conversely, Plaintiff's Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

**Date: November 16, 2005**                              **s/ Christopher A. Boyko**
                                                          **CHRISTOPHER A. BOYKO**
                                                          **United States District Judge**

10